# STATE OF TENNESSEE
# THE CIRCUIT COURT FOR KNOX COUNTY

## SUMMONS

__TERRI MARSH_____ PLAINTIFF )

vs.                                                CIVIL ACTION NO. 2-10-23

__SYNEOS HEALTH, LLC_____ DEFENDANT )

To the above named defendant (s): Syneos Health, LLC
c/o Registered Agent: United Agent Group, Inc.
205 Powell Place
Brentwood, Tennessee 37027

You are hereby summoned and required to serve upon __Larry L. Crain, Esq.__ __Crain Law Group, PLLC__, plaintiff / plaintiff's attorney, whose address is __5214 Maryland Way, Wuite 402, Brentwood, Tennessee 37027__, an answer to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. A copy of the answer must be filed with the court either before or within a reasonable time after service. If you fail to do so, judgment by default can be taken against you for the relief demanded in the complaint.

Issued and attested this the __17__ day of __January__, __2023__.

_Charles D. Susano III_
Charles D. Susano III, Clerk

_Deputy Clerk_

ADA
FOR ASSISTANCE CALL
865 / 215-2641

## NOTICE

To the defendant (s):

Tennessee law provides a Ten Thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek counsel of a lawyer.

**EXHIBIT A**

## SERVICE INFORMATION

To the process server:

Defendant _____ can be served at:

_____

## RETURN

I received this summons on the _____ day of _____, _____.

I hereby certify and return that on the _____ day of _____, _____. I:

[ ] served this summons and complaint on the defendant _____ in the following manner:

_____.

[ ] failed to serve this summons within 90 days after its issuance because:

_____

_____.

_____
Process Server (Required to be filled out by Process Server)

Name (please print):_____

Address: _____

The Americans with Disabilities Act prohibits discrimination against any qualified individual with a disability. The Tennessee Judicial Branch does not permit discrimination against any individual on the basis of physical or mental disability in accessing its judicial programs. In accordance with the Americans with Disabilities Act, if necessary, the Tennessee Judicial Branch will provide reasonable modifications in order to access all of its programs, services and activities to qualified individuals with disabilities.

If you require a modification to access the judicial program and/or have special needs because of a qualified disability, you must submit a written **Request for Modification** to the Local Judicial Program ADA Coordinator listed below at least five (5) business days prior to the date of the judicial proceeding, if possible. A form is available from the Local Judicial Program ADA Coordinator or from the Tennessee Judicial Program ADA Coordinator (www.tncourts.gov)

If you need assistance, have questions or need additional information, please contact the Local Judicial Program ADA Coordinator:

> ADA Compliance Officer
> Knox County Human Resources Office
> Suite 360, City-County Building
> 400 Main Street, Knoxville, Tennessee 37902
> Voice Phone: (865) 215-2952    TTY: (865) 215-2497

If you need assistance, have questions or need additional information, you may also contact the Tennessee Judicial Program ADA Coordinator:

> ADACoordinator
> State Judicial ADA Program
> Administrative Office of the Courts
> Nashville City Center
> Suite 600, 511 Union Street
> Nashville, Tennessee 37219
> Telephone (615) 741-2687    FAX: (615)741-6285

The Tennessee Judicial Branch's Americans with Disabilities Act Policy regarding access to judicial program, as well as a Request for Modification form may be found online at www.tncourts.gov.

# IN THE CIRCUIT COURT FOR KNOX COUNTY, TENNESSEE

| |
|---|
| **TERRI MARSH,** |
| *Plaintiff,* |
| -vs- |
| **SYNEOS HEALTH, LLC,** |
| *Defendant.* |

Case No. 2-10-23

**JURY DEMAND**

## C O M P L A I N T

COMES NOW THE PLAINTIFF, TERRI MARSH and sues the Defendant, SYNEOS HEALTH, LLC and would state as follows:

### I. Introduction

1. The COVID-19 pandemic has impacted every aspect of American Life. Governments throughout the world have grappled with how to balance protection of one's health and yet maintain a semblance of normalcy in every day life.

2. For the first time in the history of the United States, many employers have made a condition of their employees' continued employment that they inject into their bodies multiple times a foreign, experimental drug that lacks approval by the Federal Drug Administration.

3. Terri Marsh is a former employee of Syneos Health, LLC. She brings this action for compensatory and statutory damages against Syneos Health, LLC for its

violation of Tenn. Code Ann. § 14-2-102, as well as the Tennessee Human Rights Act, codified at Tenn. Code Ann. § 4-21-101, arising out of its policy which segregates employees and intentionally discriminates against them based solely on their vaccination status.

4. This requirement inserts the employer into an individual's most personal and private medical decisions.

## II. JURISDCTION AND VENUE

5. This court is vested with subject matter and *in personam* jurisdiction to adjudicate all of the issues presented herein pursuant to Tenn. Code Ann. § 29-1-143 and Tenn. Code Ann. § 29-14-102.

6. Venue in this Court is proper pursuant to Tenn. Code Ann. § 20-4-101.

### III. Parties

7. Plaintiff Terri Marsh is an adult citizen and resident of Knox County, Tennessee.

8. Defendant Syneos Health, LLC ("Syneos") is a Delaware Limited Liability Company. Its principal headquarters are located at 1030 Sync Street, Morrisville, North Carolina. Process may be served on its registered agent in the State of Tennessee: United Agent Group, Inc., 205 Powell Place, Brentwood, Tennessee 37027.

## III. Facts

9. Syneos is a biopharmaceutical company with employees located in various states including the State of Tennessee.

10. Terri Marsh was hired by Syneos in January 2020, and served as a Sales Representative assigned to Clarus Therapeutics. Her duties included establishing, maintaining, and growing business relationships within designated accounts, regional hospitals, integrated delivery networks and other emerging key accounts in the assigned geography to enhance reimbursement and patient access. She collaborated with those in her sales teams to lead and provide strategic planning regarding market access and patient access domains and programs.

11. Ms. Marsh's base salary was $82,500.00 per year, with additional work-based bonuses each year of $30,000.00.

12. During her tenure at Syneos, Ms. Marsh received extremely positive reviews, with no demerits or concerns about her work.

13. From the beginning, Ms. Marsh has worked remotely; however, she did work with clients face to face depending on client requests and needs. Her role included meetings by telephone or virtual meetings with clients and other sales representatives and accounts via Webex, zoom, and Microsoft Teams.

14. Ms. Marsh's role and the way in which she performed her duties during the Covid-19 pandemic were virtually 100% remote, while maintaining less client face-to-face meetings in the field and more virtual interactions.

15. In September of 2021, Syneos sent out a Mandatory Vaccination Policy with a submission due date of October 22, 2021. Within this announcement Syneos did allow for employees to submit exemption requests.

16. In response to this announcement Ms. Marsh sought a religious exemption in October of 2021.

17. On October 21, 2021, Ms. Marsh received notification that her medical exemption was approved until further notice.

18. Between October 22, 2021 and December 1, 2021, Ms. Marsh was hired for a new contract to launch a new product with Amgen/Astra Zeneca. Nothing was mentioned in that contract, or in the boarding process regarding vaccination requirements or exemption requirements.

19. From December 6 through December 8, 2021, Ms. Marsh attended a large, in person conference in Nashville, Tennessee, along with other sales representatives from both Amgen and Astra Zeneca; during which there was no mention of exemptions or vaccination requirements.

20. On December 9, 2021, Ms. Marsh received an email titled "COVID vaccination policy". It stated that Syneos' would require all employees to be vaccinated against COVID-19, and that it was no longer accepting any previously approved exemptions.

21. In December of 2021, Ms. Marsh sent an email to Syneos Health Human Resources informing them of the specifics of the new Tennessee law regarding Covid-19 vaccinations.

22. Syneos replied to Ms. Marsh that its policies were based on federal OSHA regulations and that it did not recognize Tennessee state law.

23. The Defendant also told Ms. Marsh that she would need to be vaccinated against COVID-19 or be terminated on January 31, 2022.

24. Ms. Marsh contacted a Syneos Health Human Resources Officer to discuss whether she would be receiving her earned for the fourth quarter of 2021.

25. The HR officer stated that the board had discussed that issue and it had decided no bonuses would be paid to terminated employees for the fourth quarter of 2021.

26. During her tenure on the Clarus Therapeutics contract, which began in January 2020, Ms. Marsh was a high-performing sales representative. The last sales figures that she received before her termination ranked her as the second highest performing sales person in the entire Clarus Therapeutics sales force.

27. This record put Ms. Marsh on track to enter the Presidents Club, which recognizes the top 10% of the sales force.

28. For 2022, the award was an all-expenses paid trip to Rome, Italy, valued at approximately $15,000.

29. The bonus Ms. Marsh should have been paid for the fourth quarter of 2021 was approximately $10,000.

30. In addition, any employee who started with the Clarus Therapeutics contract from its inception in January 2020, was eligible to receive another bonus of approximately $5,000.

31. The total bonuses to which Ms. Marsh was entitled equaled approximately $30,000.00.

32. In addition, Ms. Marsh was informed by her manager that had she remained in her position, she would have received a salary increase to over $90,000 for 2022.

33. From a religious perspective, the reason that Ms. Marsh objects to the vaccine on religious grounds is because the four most widely used COVID-19 vaccines across the globe all used abortion-derived fetal cell lines in their research, development, production and/or testing. Those vaccines are: AstraZeneca/Oxford, Janssen/Johnson & Johnson, Moderna, Pfizer/BioNTech. AstraZeneca/Oxford and Janssen/Johnson & Johnson, used abortion-derived fetal cell lines in all phases of their vaccine production; in their research, development, production, and testing. Modern and Pfizer/BioNTech used abortion-derived fetal cell lines in the testing of their COVID-19 vaccines.[1]

34. Three different abortion-derived fetal cell lines were used in the four COVID-19 vaccines: HEK-293, PER.C6 and MRC-5. AstraZeneca/Oxford used two fetal cell lines in the making of its vaccine: HEK-293 and MRC-5. Jansen/Johnson & Johnson used PER.C6. Moderna used HEK-293. And

---

[1] Admin, "2021 Update: COVID-19 Vaccines Using Aborted Fetal Cell Lines," A Voice For Truth, (November 14, 2021), https://avoicefortruth.com/2021-update-covid-19-vaccines-using-aborted-fetal-cell-lines/

Pfizer/BioNTech used HEK-293T/17 (a derivative of HEK-293T, which is a derivative of HEK-293.[2]

35. In addition, the Plaintiff has serious medical concerns based on recent and evolving medical information regarding both the efficacy and the safety of these vaccines. On January 2, 2022, United States District Judge Mark T. Pittman ordered that the Food and Drug Administration release thousands of pages of documents it relied on to license its COVID-19 vaccine. The order stems from a Freedom of Information Act document lawsuit by a coalition of doctors and scientists with the nonprofit Public Health and Medical Professionals for Transparency. *Public Health and Medical Professionals for Transparency v. Food and Drug Administration*, No. 4:21-CV-01058-P, (N.D.Tex. Jan. 6, 2022).[3]

36. Judge Pittman ordered the FDA to turn over 55,000 pages of documents a month. More than 12,000 pages were due before January 31, 2022; and the first production of documents were due on or before March 1, 2022, until this court-ordered document production is complete. Currently, all of the Pfizer vaccine data was made public for the first time by the end of September 2022.

37. On March 1, 2022, the FDA released its initial batch consisting of approximately 55,000 pages of documents. This release is the first time the

---

[2] Admin, "2021 Update: COVID-19 Vaccines Using Aborted Fetal Cell Lines," A Voice For Truth, (November 14, 2021), https://avoicefortruth.com/2021-update-covid-19-vaccines-using-aborted-fetal-cell-lines/

[3] https://fingfx.thomsonreuters.com/gfx/legaldocs/gdvzykdllpw/Pittman%20FOIA%20Order.pdf

American public has had access to this data that Pfizer submitted to the FDA from its clinical trials in support of a Covid-19 vaccine license.

38. In a 38-page document titled 5.3.6 CUMMULATIVE ANALYSIS OF POST-AUTHORIZATION ADVERSE EVENT REPORTS OF PF-07302048 (BNT162B2) RECEIVED THROUGH 28-FEB-2021[4], Pfizer admitted that when it applied for FDA approval, it was aware of almost 158,000 adverse events. This document also features an appendix with a list which reports that Pfizer's Covid vaccine has a range of 1,291 possible side effects.

39. The list of side effects from the Pfizer vaccine include: acute kidney injury, acute flaccid myelitis, anti-sperm antibody positive, brain stem embolism, brain stem thrombosis, cardiac arrest, cardiac failure, cardiac ventricular thrombosis, cardiogenic shock, central nervous system vasculitis, death neonatal, deep vein thrombosis, encephalitis brain stem, encephalitis hemorrhagic, frontal lobe epilepsy, foaming at mouth, epileptic psychosis, facial paralysis, fetal distress syndrome, gastrointestinal amyloidosis, generalized tonic-clonic seizure, Hashimoto's encephalopathy, hepatic vascular thrombosis, herpes zoster reactivation, immune-mediated hepatitis, interstitial lung disease, jugular vein embolism, juvenile myoclonic epilepsy, liver injury, low birth weight, multisystem inflammatory syndrome in children, myocarditis, neonatal seizure, pancreatitis,

---

[4] 5.3.6 CUMMULATIVE ANALYSIS OF POST-AUTHORIZATION ADEVERSE EVENT REPORTS OF PF-07302048 (BNT162B2) RECEIVED THROUGH 28-FEB-2021, https://www.riotimesonline.com/wp-content/uploads/2022/03/Pfizer-real-data-released.pdf

pneumonia, stillbirth, tachycardia, temporal lobe epilepsy, testicular autoimmunity, thrombotic cerebral infarction, Type 1 diabetes mellitus, venous thrombosis neonatal, and vertebral artery thrombosis among 1,246 other medical conditions following vaccination.

40. This document demonstrates that people aged 31-50 fare the worst after getting injected with the Pfizer vaccine. And women appear to suffer far more damage from the vaccine compared to men, according to the data, as do both men and women between the ages of 31 and 50. People in the 51-64 years old demographic are next in line, followed by the elderly and younger people between the ages of 18-30.

41. A naturally immune unvaccinated worker is presumably at less risk than an unvaccinated worker who has never had the virus. *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, No. 21-60845, 2021 WL 5279381, at *6 (5th Cir. Nov. 12, 2021).

42. "The power to require or regulate a person's choice in the mode of securing healthcare services, or to impose a penalty related thereto, is not found in the Constitution of the United States, and is therefore a power reserved to the people pursuant to the ninth amendment, and to the several states pursuant to the tenth amendment. This state hereby exercises its sovereign power to declare the public policy of this state regarding the right of all persons residing in this state in choosing the mode of securing healthcare services." Tenn. Code Ann. § 56-7-1016(c)(1),

43. Pursuant to Tenn. Code Ann. § 56-7-1016 (c)(2), "[i]t is declared that the public policy of this state, consistent with our constitutionally-recognized and inalienable right of liberty, is that every person within this state is and shall be free to choose or to decline to choose any mode of securing healthcare services without penalty or threat of penalty."

## IV.
## CAUSES OF ACTION

### COUNT I
### Violation of Tenn. Code Ann. § 14-2-102
### COVID-19 Vaccine Status

44. The preceding paragraphs are incorporated by reference as if set forth fully herein.

45. On November 12, 2021, the Tennessee General Assembly enacted Tenn. Code. Ann. § 14-1-102, *et seq.* which protects citizens of the State of Tennessee and provides a safe harbor against the loss or threatened loss of employment for refusal to submit to any form of medical treatment.

46. The findings of the Tennessee General Assembly in its enactment of this legislation are stated in Tenn. Code Ann. § 14-1-102:

**Tenn. Code Ann. § 14-1-102. Findings.**

The general assembly finds that:

(1) Setting forth the right of people in the context of COVID-19 restrictions in a statute assists the citizens of this state in the enforcement and protection of their rights and creates a safe harbor for those desiring to avoid litigation;

(2) Tennessee, as a great southern state within our federal system of government, is free to enact laws to protect the health and safety of its citizens under the police powers inherent to all states of a federal system of government;

(3) The United States Constitution does not prohibit the states from regulating health and medical practices, nor does it require any person to consent to any form of medical treatment, directly or indirectly, in relation to COVID-19;

(4) The right at common law to personal security and the liberty to be free from an unwanted touching of one's limbs and body was retained by the people of this state, and that right includes rights and duties with respect to medical treatment administered by other persons, such as through COVID-19 vaccinations;

(5) Informed consent between patients and healthcare practitioners protects the rights at common law of persons and all such consent must be voluntary and not given under duress, coercion, misrepresentation, or fraud; and

(6) Consistent with our constitutionally recognized and inalienable right of liberty, every person within this state is and must remain free to choose or to decline to be vaccinated against COVID-19 without penalty or threat of penalty.

2021 Pub. Acts (3rd Ex. Sess.), c. 6 §1, eff. Nov. 12, 2021.

47. The General Assembly further provided for a private right of action by those citizens directly impacted by a threatened and coercive vaccine mandate, such as Ms. Marsh in this case who has been terminated from her employment because she refused to consent to this medical treatment.

48. The remedies afforded in Tenn. Code Ann. § 14-6-103 are as follows:

**Tenn. Code Ann. § 14-6-103. Remedies.**

A person injured as a result of a violation of chapter 2 or § 14-4-103 of this title is entitled to maintain a private right of action for injunctive relief and to recover compensatory damages and reasonable attorney's fees against an alleged violator.

2021 Pub. Acts (3rd Ex. Sess.), c.6, §1, eff. Nov. 12, 2021.

49. The Plaintiff Terri Marsh was terminated from her employment because she would not submit to an involuntary medical procedure as a condition of maintaining her livelihood.

50. The Plaintiff Terri Marsh has been injured, and faces further and imminent injury by virtue of Syneos's coercive policy and termination due to her religious inability to submit to a medical procedure, *i.e.*, inject into her body a foreign substance that is still experimental and not FDA approved, and which would further violate her sincerely held religious beliefs.

51. The actions of Syneos constitute adverse employment action and has further and proximately caused the Plaintiff Terri Marsh to suffer economic injury, mental anguish, humiliation and embarrassment as well as other emotional injury.

## COUNT II
### Tennessee Human Rights Act
### Tenn. Code Ann. § 4-21-101, et seq.

52. Plaintiff incorporates by reference herein the allegations contained in the previous paragraphs as fully as though set forth verbatim, and does further allege as follows.

53. The Tennessee Human Rights Act ("the Act") is a comprehensive anti-discrimination law, *Phillips v. Interstate Hotels Corp.*, 974 S.W.2d 680, 683 (Tenn.1998), intended to further the policies embodied in the similar federal laws against employment discrimination. Tenn. Code Ann. § 4-21-101(a)(1) (1998); *Frazier v. Heritage Fed. Bank for Savs.*, 955 S.W.2d 633, 636 n. 1 (Tenn.Ct.App.1997).

54. The Act proscribes discriminatory employment practices with respect to the compensation, terms, conditions, or privileges of employment based on considerations of race, creed, color, religion, sex, age, or national origin. Tenn. Code Ann. § 4–21–101(a)(3).

55. Tennessee's courts regularly consult and apply the decisions of their federal counterparts for guidance when called upon to construe and apply the Tennessee Human Rights Act. *Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn.1996); *Frazier v. Heritage Fed. Bank for Savs.*, 955 S.W.2d at 636 n. 1.6.

56. The actions of the Defendant in failing to reasonably accommodate the Plaintiff's sincerely held religious beliefs constitute a discriminatory practice in violation of the Act.

57. As a direct and proximate consequence of the Defendant's discriminatory practice, the Plaintiff has suffered, and continues to suffer, economic injury, loss of earnings and other compensation, emotional injury, humiliation, embarrassment and mental anguish for which she is entitled to an award of compensatory damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. That pursuant to Tenn. Code Ann. § 14-6-103, Plaintiff Terri Marsh, be awarded compensatory damages against Syneos in an amount to be

determined at trial, but less than Three Hundred Thousand Dollars, together with her costs and reasonable attorney's fees;

b. That pursuant to Tenn. Code Ann. § 4-21-101, *et seq.*, the Plaintiff be awarded compensatory damages arising out of the Defendant's discriminatory employment practices;

c. That Plaintiff have and recover nominal damages;

d. Such other and further relief as this Court may deem just and appropriate, including costs and reasonable attorney's fees as allowed under Tenn. Code Ann. § 14-6-103 and Tenn. Code Ann. § 4-21-101, *et seq.*

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Respectfully Submitted,

*/s/ Larry L. Crain*
**Larry L. Crain** TN Bar No. 9040
**CRAIN LAW GROUP, PLLC**
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 376-2600
Fax: (615) 345-6009
Email: larry@crainlaw.legal

*/s/ Emily Castro*
**Emily Castro** TN Bar No. 028203
**CRAIN LAW GROUP, PLLC**
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 376-2600
Fax: (615) 345-6009
Email: emily@crainlaw.legal

*Attorneys for the Plaintiff*